KIRBY AISNER & CURLEY LLP  *Hearing Date: September 21, 2020*
*Proposed Attorneys for the Debtor*  *Hearing Time: 10:00 a.m.*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Erica R. Aisner, Esq.
eaisner@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

SOUNDVIEW PREPARATORY SCHOOL,                Chapter 11
                                              Case No. 20-22948 (RDD)
                    Debtor.
---------------------------------------------------------------X

### DEBTOR'S MOTION FOR AN ORDER: (I) AUTHORIZING THE PRIVATE SALE OF THE REAL PROPERTY LOCATED AT 370 UNDERHILL AVENUE, YORKTOWN HEIGHTS, NEW YORK, (II) AUTHORIZING THE ASSUMPTION OF THE CONTRACT OF SALE IN CONNECTION THEREWITH; AND (III) GRANTING RELATED RELIEF

**TO:  THE HONORABLE ROBERT D. DRAIN,
       UNITED STATES BANKRUPTCY JUDGE:**

Soundview Preparatory School, the above captioned debtor and debtor-in-possession (the "Debtor"), by its attorneys, Kirby Aisner & Curley LLP, files this motion (the "Motion") seeking entry of an order (i) pursuant to §§105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure authorizing the private sale of 370 Underhill Avenue, Yorktown Heights, New York (the "Property") to Unicorn Contracting Corp. ("Purchaser") pursuant to the Real Estate Contract of Sale dated May 22, 2020, as amended on August 11, 2020 (the "Contract") free and clear of any and all claims, liens, encumbrances and other interests; (ii) authorizing the assumption of the Contract in connection therewith; and (iii) granting related relief. In support of this Motion, the Debtor respectfully represents:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This proceeding has been initiated pursuant to Bankruptcy Code §§ 105(a), and 363.

## BACKGROUND

4. On August 19, 2020, (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5. Thereafter the Chapter 11 Case was referred to this Court for administration under the Bankruptcy Code.

6. The Debtor has continued as a debtor-in-possession pursuant to §1107 and 1108 of the Bankruptcy Code.

7. No trustee, examiner or creditors' committee has been appointed in this proceeding.

8. The Debtor is a not-for-profit education corporation which operated a small private school serving 6th through 12th grade students. The Debtor operated from the Property which it purchased in 2007.

9. Over the past few years, the Debtor experienced declining enrollment, however, due the efforts of its leadership and the generosity of its benefactors (many of whom are current Board members), as well as mid-year enrollments, it was historically able to keep the doors open. Sadly, in January 2020, immediate cash flow shortages made this impossible and the school was forced to announce closure in the middle of its academic year.

10. Focused on finding a path forward that would provide the greatest recovery to the Debtor's creditors, the Board set out to monetize the Debtor's most valuable asset, the Property.

11. As soon as the closure was determined, the Board began investigating the most efficient way to wind down the affairs of the school including the liquidation of its assets. Unfortunately, just as these efforts began to take shape, the pandemic hit and the real estate market, together with the economy in general, shut down. Notwithstanding, the Board consulted with a number of real estate professionals about the value of the Property and who potential buyers might be. The Board also reached out to the Town of Yorktown to see if it might have interest in acquiring the Property for its own uses.

12. Word of the school's closure became widely known very quickly and the Head of School was contacted by a local developer, the Purchaser, who was interested in acquiring the Property. In or about the same time, certain local Town officials suggested and then introduced the Board to the very same developer as a potential buyer for the campus. The Purchaser is a successful and well-respected developer in the area who recently completed a project in the Town, not far from the Property.

13. Negotiations took place first between the Board and Purchaser and later through their respective counsel, and the result of these negotiations were successfully memorialized in the Contract. A copy of the Contract is annexed hereto as ***Exhibit "A"***.

14. In fact, BOA had agreed that it would waive monthly interest for June and July as well as any pre-payment penalty that may be due in connection with the payoff, if the Debtor was able to close on the sale transaction by July 31, 2020, which unfortunately was not possible.

15. Given what it believed to be the best path forward, the Board submitted a Petition to sell its property to the New York State Attorney General's office ("AG"), which is required under applicable State law. In connection with the Petition, the Debtor commissioned an updated appraisal report, a copy of which is annexed hereto as ***Exhibit "B"***.

3

16. The Board had hoped that the AG would approve the Petition and grant a waiver which would enable the Debtor to avoid having to obtain approval of the sale via a formal Court Order. However, the Debtor was advised that a waiver could not be issued because, among other reasons, the statute does not permit a waiver when the petitioner is insolvent.

17. Although the Debtor is required to obtain a Court Order authorizing the sale of the Property, the Debtor has continued to work through the AG's comments to the Petition and requests for additional information.

18. Faced with the requirement that the Debtor would need judicial approval for the sale of the Property, given its insolvency, and the concern that proceeding in State Court would be more costly and take longer than doing so in bankruptcy court, the Debtor elected to proceed with the liquidation of its assets and orderly wind down of its affairs through a chapter 11 process.

***Contract of Sale for the Property***

19. On May 22, 2020, the Debtor entered into the Contract with Purchaser to sell the Property for $2.5 million ("Closing Payment") with an additional $350,000 to be paid upon approval of the Purchaser's intended development for the Property by the municipality (the "Second Payment")(the Closing Payment and the Second Payment are collectively, the "Purchase Price").

20. At the time of Contract, according to the Debtor's calculations and the agreement with BOA, the Debtor believed that the proceeds from sale would be sufficient to satisfy BOA (per the agreement), all outstanding wages and benefits due its faculty and staff, professional fees (legal and accounting), the repayment in full of the tuition due families, the debtor's vendors with a 40% distribution to the former Head of School and former Assistant Head under their contracts.

21. When the decision was made to seek authority to sell the Property in bankruptcy,

4

the Debtor and the Purchaser negotiated an Amendment to the Contract. The Amendment served several purposes. The Amendment addressed certain of the concerns raised by the AG, the most significant being the payment of the full Purchase Price at closing instead of in two installments which, at best, would mean a delay in payment to creditors and, at worst, risk of non-payment on the Second Payment if the conditions were not met. Also, the Amendment gave the Debtor comfort that the Purchaser would continue to be bound to its obligation to purchase the Property, subject to the terms of the Contract and in turn, gave the Purchaser certain protections going forward. A copy of the Amendment to the Contract is annexed hereto as **Exhibit "C"**.

## RELIEF REQUESTED AND BASIS FOR RELIEF

22. By this Motion, the Debtor seeks authority from this Court pursuant to Sections 363 and 365 of the Bankruptcy Code to assume the Contract and sell the Property to Purchaser in a private sale.

### A. Assumption of the Contract

23. Pursuant to §365(a) of the Bankruptcy Code, a debtor may assume or reject any executory contract, subject to the approval of the Bankruptcy Court. 11 U.S.C. §365(a). Although the Bankruptcy Code does not provide a standard for determining when it is appropriate for a court to approve a debtor's assumption or rejection of an executory contract or an unexpired lease, courts have uniformly deferred to the business judgment of the debtor. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993) ("A bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its "business judgment" to determine whether it would be beneficial or burdensome to the estate to assume it."); *see, also, In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re G. Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd,* 187 B.R. 111 (S.D.N.Y.

5

1995) ("Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment [to assume or reject an executory contract] will not be altered.")

24. Here, the assumption of the Contract is a necessary component of the sale transaction. The assumption of the Contract will allow the Debtor to proceed with the sale of the Property, as such, represents the sound exercise of the Debtor's business judgment.

B. **Basis for a Private Sale to Purchaser**

25. While many section 363 sales are conducted under competitive bidding procedures, there is no requirement in section 363 of the Bankruptcy Code to do so. In fact, Bankruptcy Rule 6004(f) specifically contemplates private sales with the statement that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction". Here, the Debtor supports the private sale of the Property.

*26.* The sale of real property in bankruptcy is not required to be subject to higher and better offers when circumstances warrant approval of a private sale. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

27. In fact, courts in this District have approved private sales of assets when they think the general standards for approval under section 363 of the Bankruptcy Code are satisfied. See, e.g., *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order

approving the sales of one of the debtors' facilities by private sale, not subject to higher and better offers); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

28. The Debtor submits that the circumstances in this case warrant approval of a private sale to Purchaser as it is not only in an amount which the Debtor believes is the highest and best price, but will allow the Debtor to limit its administrative costs with a swift closing and expedite the distribution to creditors, many of whom are the families of students who themselves are experiencing financial difficulties and desperately need their tuition refund.

29. The Purchase Price is also directly in line with the appraisal which values the Property at $3,000,000. Putting aside that the appraisal does not take into consideration the pandemic, the sale to Purchaser does not involve a real estate broker which would typically be 5-6% of the sale price, which is $150,000 to $180,000 for a sale of $3,000,000.

30. Moreover, the Debtor submits that the nature of the Property, together with the current state of affairs and the market due to the COVID-19 pandemic, provide additional support for the approval of a private sale to the Purchaser. In today's economic climate, many private schools are in financial distress or worse, have been forced to close. Even prior to the pandemic, there are very few sales of similar properties, which is evidenced in the comparables used by the appraiser in the appraisal report. As such, the likelihood of the Property being purchased by a similar end user is not good. In terms of a sale to another developer, the fact that the Purchaser is willing to close prior to the approval of its development, which includes a zoning change, is a major benefit to the Debtor. Typically, such a risk would be borne by the seller as a contingency or condition to close or would otherwise be reflected in the purchase price.

31. Were the Debtor required to market the Property for higher and better offers, not only would that require a real estate broker or auctioneer, there would also be additional carrying costs incurred during that time. These costs would include accrued interest due to BOA of approximately $9,000 per month, insurance, and utilities, which would further reduce the net recovery to the estate.

32. For all of these reasons, the private sale of the Debtor's assets as requested herein should therefore be approved.

C. **Debtor's Sale Pursuant to Bankruptcy Code §363(b) and (f) is Appropriate and the Debtor Has Exercised Sound Business Judgment**

33. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b)(1). Inasmuch as the Property constitutes significant assets of the Debtor's estate, the proposed sale is out of the ordinary course of the Debtor's business.

34. Section 363 of the Bankruptcy Code does not set forth an express standard for determining whether a sale of property under §363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard. *See, In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Walter*, 83 B.R. 14, 17 (Bankr. 9th Cir. 1988); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

35. The Court of Appeals for the Second Circuit first enunciated this standard by stating: "The rule we adopt requires that a judge determining a §363(b) application expressly find

8

from the evidence presented before him at the hearing *a good business reason* to grant such application." *Lionel*, 722 F.2d at 1070-71 (emphasis added).

36. Section 363(b) of the Bankruptcy Code does not require that the Court substitute its business judgment for that of the Debtor, *See, e.g., Ionosphere Clubs*, 100 B.R. at 676 (court will not substitute a hostile witness's business judgment for a debtor's, unless testimony "established that the [debtor] had failed to articulate a sound business justification for its chosen course"). Rather, the Court should ascertain whether a debtor has articulated a valid business justification for the proposed transaction. This is consistent with "the broad authority to operate the business of the Debtor . . .[which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good faith by a Trustee". *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

37. Other courts have approved the sale of a debtor's assets under §363(b)(1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See, e.g., In re Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997) (setting forth the foregoing four elements in connection with the 363(b)(1) inquiry and citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re General Bearing Corp.*, 136 B.R. 361, 365-66 (Bankr. S.D.N.Y. 1992) (suggesting that the salient factors under *Lionel* are the foregoing elements). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Ames Dept. Stores, Inc.*, 136 BR 357, 359 (Bankr. S.D.N.Y. 1992); *In re Integrated*

9

*Resources, Inc.*, 147 B.R. at 656-57 (S.D.N.Y. 1992) (a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate). The Debtor has determined that the maximization of the return to creditors can best be accomplished through the proposed asset sale upon the terms contained in the APA and that the transaction is in the best interests of its estate and creditors and should be approved by the Court.

38. In determining whether a "sound business purpose" exists with respect to a sale of assets prior to confirmation of a plan, Courts have looked at such factors as: the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly perhaps, whether the asset is increasing or decreasing in value. *Lionel*, 722 F.2d at 1071.

39. In the Debtor's business judgment, the relief sought will maximize the Debtor's recovery on the Property and is therefore in the best interests of its estate and creditors. Allowing the Debtor to close on the sale of the Property to the Purchaser pursuant to the Contract via a private sale will avoid unnecessary costs and time delays.

40. Thus, the Debtor believes that the sale of the Property to the Purchaser represents a prudent and proper exercise of its business judgment and is supported by articulated business reasons because, with the sale to Purchaser, the Debtor is maximizing the value of the Property without marketing costs associated with an auction process, or additional costs and risks of maintaining the Property over an extended time period. *See, NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (the "fundamental purpose of reorganization is to prevent the debtor from going into

liquidation, with an attendant loss of jobs and possible misuse of economic resources"); *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997) ("public policy, as evidenced by Chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and concomitant preservation of jobs and going concern values").

41. Based upon the foregoing, the Debtor respectfully submitted that it has exercised sound business judgment in proceeding with a sale of the Property via the Contract and through a private sale process.

### D. Sale Free and Clear of Encumbrances

42. In addition to seeking approval of a private sale outside of the ordinary course of business, the Debtor seeks approval to sell the Property, free and clear of any and all liens, claims or encumbrances in accordance with §363(f) of the Bankruptcy Code. A debtor-in-possession may sell property to §§363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

43. The Debtor's creditors include Bank of America, which holds a mortgage on the campus in the approximate amount of $2.3 million, the Head of School who is owed wages from the end of the year in the amount of $68,500, certain former faculty and staff who are owed (employer) retirement contributions totaling approximately $16,000, suppliers and service

11

providers in the approximate amount of $90,000 and the families of students who paid tuition through the end of the academic year $300,000. There is also an additional $234,000 due under retirement contracts to the former Head of School and former Assistant Head, which claims may be subject to subordination or adjustment.

44. The Purchase Price is in an amount sufficient to satisfy all liens against the Property while still leaving sufficient remaining funds to satisfy all priority claims in full and providing for a significant distribution to general unsecured creditors. Given this proposed "waterfall," the Debtor submits that the conditions set forth in 363(f) are satisfied.

## NOTICE

45. Notice of this Motion has been provided to (i) Purchaser, and its counsel, (ii) Office of the United States Trustee; (iii) all of the Debtor's secured and unsecured creditors and any known counsel therefor; and (iv) parties who have filed notices of appearance. The Debtor submits that said notice is adequate and proper.

46. The Debtor respectfully submits that such notice is good and sufficient under the circumstances, and satisfies the requirements of Bankruptcy Rules 2002, 6004, and 6006.

## CONCLUSION

47. The Debtor submits that a private sale of the Property pursuant to the Contract is a sound and prudent exercise of its business judgment. The sale to Purchaser will maximize the value of the Property, will satisfy all allowed secured claims arising out of the Property with significant funds remaining in the estate, subject to further Court Order.

48. Accordingly, the Debtor respectfully requests (i) approval of the assumption of the Contract, and (ii) authorization of the sale of the Property to Purchaser pursuant to the Contract free and clear of all claims, liens, interests and encumbrances.

**WHEREFORE**, the Debtor seeks the entry of an order (i) pursuant to §365(a) of the Bankruptcy Code, authorizing the Debtor to assume the Contract with Purchaser, (ii) pursuant to §§363(b) and (f) of the Bankruptcy Code and Bankruptcy Rule 6004, authorizing the Debtor to sell the Property to the Contract free and clear of any and all claims, liens, encumbrances and other interests thereon, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Scarsdale, New York
August 19, 2020

          KIRBY AISNER & CURLEY LLP
*Proposed Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: */s/ Erica Aisner*
    Erica Aisner

13